JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS
Julie L. Heeter, Individually and as Administrator of the Estate of Bryan E. Harris, deceased

**(b)** County of Residence of First Listed Plaintiff    Delaware County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Dion G. Rassias, Esquire/Lane R. Jubb, Jr., Esquire
The Beasley Firm, LLC, 1125 Walnut Street, Philadelphia, PA  19107
(215) 592-1000

## DEFENDANTS
Honeywell International, Inc. d/b/a Honeywell Security, ADT LLC d/b/a ADT Security Services, d/b/a ADT, d/b/a ADT Safewatch, d/b/a ADT Pulse and d/b/a ADT Monitoring and The ADT Corporation

County of Residence of First Listed Defendant    Morris County, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ❏ 1  U.S. Government Plaintiff | ❏ 3  Federal Question *(U.S. Government Not a Party)* |
| ❏ 2  U.S. Government Defendant | ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal | ❏ 400 State Reapportionment |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Product Liability | | 28 USC 157 | ❏ 410 Antitrust |
| ❏ 140 Negotiable Instrument | Liability | ❏ 367 Health Care/ | | | ❏ 430 Banks and Banking |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ❏ 820 Copyrights | ❏ 460 Deportation |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Product Liability | | ❏ 830 Patent | ❏ 470 Racketeer Influenced and |
| ❏ 152 Recovery of Defaulted | Liability | ❏ 368 Asbestos Personal | | ❏ 840 Trademark | Corrupt Organizations |
| Student Loans | ❏ 340 Marine | Injury Product | | | ❏ 480 Consumer Credit |
| (Excludes Veterans) | ❏ 345 Marine Product | Liability | | **LABOR** | ❏ 490 Cable/Sat TV |
| ❏ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ❏ 710 Fair Labor Standards | **SOCIAL SECURITY** | ❏ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | Act | ❏ 861 HIA (1395ff) | Exchange |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | ❏ 371 Truth in Lending | ❏ 720 Labor/Management | ❏ 862 Black Lung (923) | ❏ 890 Other Statutory Actions |
| ❏ 190 Other Contract | Product Liability | ❏ 380 Other Personal | Relations | ❏ 863 DIWC/DIWW (405(g)) | ❏ 891 Agricultural Acts |
| ❏ 195 Contract Product Liability | ☒ 360 Other Personal | Property Damage | ❏ 740 Railway Labor Act | ❏ 864 SSID Title XVI | ❏ 893 Environmental Matters |
| ❏ 196 Franchise | Injury | ❏ 385 Property Damage | ❏ 751 Family and Medical | ❏ 865 RSI (405(g)) | ❏ 895 Freedom of Information |
| | ❏ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ❏ 790 Other Labor Litigation | | ❏ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement | **FEDERAL TAX SUITS** | ❏ 899 Administrative Procedure |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ❏ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party | ❏ 950 Constitutionality of |
| ❏ 240 Torts to Land | ❏ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ❏ 245 Tort Product Liability | Accommodations | ❏ 530 General | | | |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| | Other | ❏ 550 Civil Rights | Actions | | |
| | ❏ 448 Education | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ❏ 2 Removed from State Court   ❏ 3 Remanded from Appellate Court   ❏ 4 Reinstated or Reopened   ❏ 5 Transferred from Another District *(specify)*   ❏ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §1332
Brief description of cause:
Fraud, Negligence, Wrongful Death, Survival Act, and Unfair Trade Practices

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.     **DEMAND $**  30,000,000.00     CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes  ❏ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*     JUDGE _____     DOCKET NUMBER _____

DATE
02/03/2016

SIGNATURE OF ATTORNEY OF RECORD

---

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JULIE L. HEETER,** Individually and as Administrator of the **ESTATE OF BRYAN E. HARRIS, deceased** 2418 Providence Rd. Apt 1 Chester, Pa 19013 **Plaintiffs** v. **HONEYWELL INTERNATIONAL, INC.** d/b/a **HONEYWELL SECURITY** 101 Columbia Rd. Morristown, NJ 07962 And **ADT LLC** d/b/a **ADT SECURITY, SERVICES,** d/b/a **ADT,** d/b/a **ADT SAFEWATCH,** d/b/a **ADT PULSE, and** d/b/a **ADT MONITORING** 1501 Yamato Rd Boca Raton, FL 33431 And **THE ADT CORPORATION** 1501 Yamato Rd Boca Raton, FL 33431 **Defendants** | **CIVIL COMPLAINT** NO: _____ **JURY TRIAL DEMANDED** |

## COMPLAINT

### I.   INTRODUCTION

1.    This case involves the completely foreseeable and preventable murder of a vibrant young man, who would still be alive today, if the Defendants had not intentionally and fraudulently deceived the Plaintiff when she came to them

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

specifically asking for protection at her home from intrusion by her Son's eventual murderer.

## II.   PARTIES

2.   Plaintiff Julie L. Heeter ("Ms. Heeter") is an adult citizen and resident of the Commonwealth of Pennsylvania, residing at the above address.  Ms. Heeter was the parent and natural mother of Bryan Harris, deceased.

3.   Ms. Heeter is the Administratrix of the Estate of Bryan E. Harris, deceased and resides at the above captioned address.

4.   Defendant Honeywell International, Inc. (hereafter "Honeywell") is a Delaware Corporation with its principal place of business in Morristown, New Jersey.  Defendant Honeywell has a headquarters and significant presence in Philadelphia at 4698 Bermuda Street, Philadelphia, PA 19137.  Defendant Honeywell actively designs, manufactures, sells, and provides consultation on residential and commercial security systems.

5.   Defendants The ADT Corporation and ADT LLC d/b/a ADT Security Services, d/b/a ADT, d/b/a ADT Safewatch, d/b/a ADT Pulse, and d/b/a ADT Monitoring (collectively hereafter "ADT") is actively engaged in the business of selling, designing, installing, and monitoring residential security alarm systems and conducts business in and throughout Pennsylvania. Defendant ADT is organized and existing under the laws of Delaware with a principle place of business located at 1501 Yamato Road, Boca Raton, FL 33431.

6.   ADT holds itself out to the public nationally as "America's #1 Home and Business Security Company" and represents to its customers that they will receive "Nationwide ADT owned and operated, monitoring centers with world-class back-up

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

2
JULIE L. HEETER, ET AL.. V. HONEYWELL INTERNATIONAL, INC., ET AL.
*Complaint*

capabilities-ensuring 24/7 service through any condition.   When an alarm is received, ADT can notify the police, fire department, or ambulance even if you're not home." ADT represents to its customers that its "[w]ireless home security options keep your system connected via a cellular network with CellGuard®"

## III.   JURISDICTION AND VENUE

7.   This Honorable Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1332.  The amount in controversy substantially exceeds one hundred fifty thousand dollars ($150,000.00) exclusive of interest and costs.  The Defendants are citizens of states other than the state in which the Plaintiff resides.

8.   This Court has jurisdiction over the parties because the Defendants engage in continuous and systematic business activity, unrelated to this suit, in Pennsylvania.   Furthermore, the fraudulent representations alleged herein took place in Pennsylvania.

9.   Venue is proper pursuant to 28 U.S.C § 1391 because all Defendants are subject to the Court's personal jurisdiction with respect to the civil action in question and thus are all residents of Pennsylvania for purposes of venue.

10.   Defendant Honeywell has a substantial presence in the Eastern District of Pennsylvania at 4698 Bermuda Street, Philadelphia, Pennsylvania, 19137 where, upon information and belief, it paid more than fifteen million ($15,000,000) dollars in employee salaries and benefits in 2015.

11.   Defendant ADT maintains numerous business locations in Philadelphia and many more within the Eastern District of Pennsylvania. Defendant ADT conducts substantial advertising in Philadelphia and throughout the Eastern District of Pennsylvania.  Furthermore, ADT advertises the Philadelphia crime statistics to

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

market its services to Philadelphia residents and residents of neighboring counties in the Eastern District of Pennsylvania:



12.    Plaintiffs are residents of the Eastern District of Pennsylvania.

13.    Defendant ADT was further aware that the Plaintiff's primary residence was located in the Eastern District of Pennsylvania at the time of the tortious conduct alleged herein.

14.    Plaintiff Julie Heeter continues to undergo mental health treatment in Philadelphia as a direct result of the facts and circumstances upon which this action has been brought.

## IV.   FACTS

15.    Plaintiff Julie Heeter and her husband, Robert Heeter, contacted ADT to request an in-home security consultation and survey because she was concerned about someone, including her son's eventual killer, breaking into her home, and wanted to be notified in the event that there was any type of security breach within her home.

16.    Plaintiffs called ADT from their primary residence in Chester, Pennsylvania, located within the Eastern District, to inquire into a potential security system.

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

17.   The Heeters requested an appointment for an ADT Salesman to visit their weekend home in Benton, Pennsylvania, which they felt needed a security system.

18.   Shortly thereafter, an ADT Salesman named Darrin Larkin contacted the Heeters at their home in Chester and arranged for a security system evaluation of their Benton residence to occur on October 11, 2014.

### A. THE ADT SALESMAN

19.   On or around October 11, 2014, a Residential Sales Representative for Defendant ADT met with the Heeters at their weekend home, located at 914 Walter Divide Road, Benton, Pa 17814.

20.   The ADT Salesman described and referenced herein is Darrin Larkin.  At all times relevant hereto, Mr. Larkin was authorized and empowered to speak on behalf of ADT under principles of actual and/or apparent authority.

21.   Mr. Larkin, an "ADT Residential Sales Representative," as an agent, employee, and representative of Defendant ADT, agreed to design a modern, comprehensive, effective, and reliable home security alarm product for The Heeters.

22.   Plaintiff and Mr. Heeter met with the ADT Salesman for approximately two hours and explained their security concerns and needs.

23.   Plaintiff explained to the ADT Salesman that she was principally concerned that certain individuals, including Cea Jay Chattin ("Mr. Chattin"), who she believed to have been out of town, were back in the area and she wanted to make sure that they were never on the property.

24.   Plaintiff sought the ADT Salesman's analysis of her vulnerabilities and the associated security recommendations for the proper and secure security system.

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

25.   At all times relevant hereto, ADT held itself out as experts in the field of home security.

26.   During this two hour meeting, The Heeters and ADT Salesman exchanged the following dialogue:

    a.  The Heeters were "not so much concerned about the property in the house but want a system that will alert us when someone comes into the house;"

    b.  The Heeters were concerned "if phone lines were pulled out or cut would we still receive notification?" The ADT Salesman assured them that "you'll get an immediate text and call anytime there is an interruption with service or connection;"

    c.  The Heeters asked about the system being "bypassed or hacked into." The ADT Salesman told them "that can't happen" and "there is 24/7 coverage;"

    d.  The Heeters asked about the sound of the alarm since the house is concrete and distant from others.  The ADT Salesman told them "you'll get a text and phone call so there was no need to have an audible alarm or strobe as backup on roof;"

    e.  The Heeters also told the Salesman that they "are leaning toward the purchase of the glass breaking alarm."  The ADT Salesman said "not necessary.  Burglars don't shatter the glass they lift the window up so a contact alarm would be sufficient."

27.   The ADT Salesman brought out his laptop and told the Heeters that "we had excellent reception of signal so we could access remotely with cell coverage."

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

JULIE L. HEETER, ET AL., V. HONEYWELL INTERNATIONAL, INC., ET AL.
*Complaint*

28.   The Heeters told the ADT Salesman that they "wanted to think about it," but the Salesman wanted the sales contract signed and payment information so "when [they] call with a decision, [he] can proceed with the installation."

29.   The Heeters did not feel comfortable and would not give the ADT Salesman their payment information and told him that "[they will] give him that when [their] decision was made."

30.   The ADT Salesman then told the Heeters about a "discount with their insurance company by having the alarm system."

31.   Shortly thereafter, Plaintiff accepted *ALL* of the security recommendations from the ADT Salesman in order to protect herself and her family from a potential intruder, including Mr. Chattin.

32.   Plaintiff's fear for her safety, the safety of her family, and the integrity of her home was premised upon her long-time knowledge of Mr. Chattin's tortured past and his conscious disregard for the well-being of others and in particular, her son, Bryan Harris.

## B.  THE ADT INSTALLER

33.   An ADT Residential Installer, as an agent, employee, and representative of Defendant ADT, agreed to install a modern, comprehensive, effective, and reliable home security alarm product in her residence.

34.   On or around November 1, 2014, an ADT Residential Installer came to Heeter's residence to install the alarm system.

35.   The Heeters and ADT Installer exchanged the following dialogue during this encounter:

   a.  The ADT Installer entered the house and said, "we have a problem;"

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

JULIE L. HEETER, ET AL., V. HONEYWELL INTERNATIONAL, INC., ET *AL*.
*Complaint*

b. The ADT Installer told the Heeters that, "he doesn't understand why [they] were sold that system because he was not able to receive a signal in the driveway;"

c. The ADT Installer told the Heeters "[he] recently installed one for someone up the road and had the same problem;"

d. The ADT Installer told the Heeters he was "unable to install it due to the wrong system [he] brought with [him];"

e. The ADT Installer said to "contact the salesperson to reschedule and [he'd] come back out to install a cell tower so [we] would have a signal."

f. The Heeters asked the ADT Installer about "the phone box right near the front door" and were concerned about someone "pulling or cutting phone lines." The ADT Installer said "[he] will tie it into the phone line in the basement so nobody could tamper with it" and "if someone pulled the line, it will be picked up by the monitoring station and we'd (ADT) be contacted."

36.   The Heeters complied with the instruction of the ADT Installer and set up another appointment to have the ADT Security system installed.

37.   On November 8, 2014, only a week later and the earliest The Heeters would be back at their Benton residence, ADT purportedly installed the "ADT Pulse" security system at The Heeters' residence.

38.   The ADT Salesman and Installer specifically told Ms. Heeter that her service included the following, while referring to an ADT brochure:

a. "Remote Arm/Disarm with a web-based device, such as a cellphone"

b. "Email and Text Alerts"

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

c. "Cellular Connection"

d. "24/7 Monitoring"

39.   The installation of the ADT Pulse security system equipment was specifically recommended and selected for the Heeters by ADT.

40.   The control panel and alarm system equipment, which ADT recommended and installed in the Heeters' home, was designed and manufactured by Defendant Honeywell at the request of ADT.

41.   The installation of the ADT Pulse system was purported to be complete on November 11, 2014.

42.   The ADT Salesman and/or Installer presented Julie Heeter with the ADT "Residential Services Contract" for her signature on November 8, 2014.   The Residential Services Contract is attached as Exhibit "A."

43.   Ms. Heeter signed the Residential Services Contract on November 8, 2014 with the understanding that her system was installed as it was designed and intended.

44.   Furthermore, Ms. Heeter signed the Residential Services Contract on November 8, 2014 with the understanding that all of the aforementioned representations by the ADT Salesman and ADT Installer were true.

45.   The Heeters paid all fees and costs associated with the ADT Pulse installation and service, in full.

46.   The ADT Salesman identified "*2418 Providence Rd. Apt 1, Chester, Pa 19013*" – the Heeters' primary residence located within the Eastern District – as the Heeters' billing address for payment of the ADT Security System installation and monthly service fees. See "Section 1. Customer Info" at Exhibit "A.2" attached hereto.

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

1.     ADT's aforementioned representations to the Heeters, specifically described herein, were intentional, deceptive, and known to be false when they were made.

2.     The Heeters reasonably relied on these recommendations and representations, known to be false by ADT, in the security protection of their home, including the "early warning" detection, 24 hour service, and *immediate notification* if and when the outside, easily-accessible, and exposed telephone lines on the side of the home were cut.

3.     From the time the ADT Pulse system was installed and purported to be operational as represented above, Plaintiff Julie Heeter monitored the home from her cell phone.

4.     Plaintiff Julie Heeter accessed the ADT Android Application frequently to ensure that no one, especially Mr. Chattin, had tried to enter the Benton residence.

5.     From the date of the installation, Plaintiff received notifications on her phone when she or Mr. Heeter was not able to enter the alarm code quickly enough when entering the home.

6.     *Less than two weeks prior to Bryan Harris' murder*, Plaintiff changed her alarm code as an additional measure to ensure that Mr. Chattin, in particular, could not enter her home.

### C. THE MURDER OF BRYAN HARRIS

7.     On March 26, 2015, at approximately 07:00, upon information and belief, Mr. Chattin entered the Heeters' Benton home through a window, purported to be protected by ADT, on a weekday when no one would be there.

*Complaint*

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

8.    He disconnected the phone lines on the ADT alarm system and removed the Honeywell control panel from the wall directly across from the front door.

9.    With the ADT alarm silenced, Mr. Chattin made his way to the location of the Heeter's heirloom firearms and began taking them out of the house.

10.    Mr. Chattin then took a rifle and shot Bryan Harris' pet, killing it, and leaving it for them to find when they arrived.

11.    Mr. Chattin then took the weapon he stole from the Heeter's home and made his way to Bryan Harris's apartment, approximately twenty minutes away, where he waited for Bryan to return from work.

12.    With no knowledge that Mr. Chattin had broken into his family's mountain home earlier that morning, shot his pet, and was armed with multiple weapons, Bryan Harris engaged Mr. Chattin in a conversation outside his apartment at approximately 20:00 in the evening, where they were seen by Bryan's landlord.

13.    Bryan Harris then began watching television in his room late into the evening.

14.    At approximately 22:30 that night, Bryan Harris spoke with his employer related to work the next morning.

15.    At some time later that evening, Mr. Chattin entered the room, faced Bryan Harris while he was watching television, and shot him in the face with a .30 caliber rifle he had stolen from the Plaintiffs' home earlier that morning.

16.    Mr. Chattin then attempted to make his pre-meditated murder look like Bryan had committed suicide.  He scattered pills around Bryan, moved the chair in which Bryan was located, switched the murder weapon, and covered Bryan's face with a blanket, as well as other explicit acts.

THE BEASLEY FIRM, LLC
1125 WALNUT STREET
PHILADELPHIA, PA 19107
215.592.1000
215.592.8360 (FAX)
WWW.BEASLEYFIRM.COM

JULIE L. HEETER, ET AL.. V. HONEYWELL INTERNATIONAL, INC., ET AL.
*Complaint*